IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JA'QUAN PARKER, | ) |
| | ) No. 2:23-cv-01737-RJC |
| Plaintiff, | ) |
| | ) |
| v. | ) Judge Robert J. Colville |
| | ) |
| ROBINHOOD CRYPTO LLC, | ) |
| | ) |
| Defendant. | ) |
| | ) |
| | ) |

**MEMORANDUM OPINION**

Robert J. Colville, United States District Judge

Before the Court is a Motion to Compel Arbitration and Stay Proceedings (ECF No. 9) filed by Defendant, Robinhood Crypto LLC. Also before the Court are the following motions filed by Plaintiff, Ja'Quan Parker: Motion for Breach of Contract (ECF No. 14), Amended Motion for Breach of Contract (ECF No. 16), Motions to Strike (ECF Nos. 19, 27), Motion for Public Disclosure (ECF No. 28), Motion for Oral Argument (ECF No. 31), Motion to Compel and for Sanctions (ECF No. 32), Motion to Alter or Amend Judgment (ECF No. 33), Motion to Expedite Ruling (ECF No. 34), Motion for Reconsideration (ECF No. 36), and Motion to Expedite the Motion for Reconsideration (ECF No. 37).

I.  **Factual Background and Procedural History**

Plaintiff brings this lawsuit, individually and behalf of all others similarly situated, alleging that Defendant committed wire fraud, securities fraud, churning accounting fraud, and investment fraud. Am. Compl. 3. Specifically, Plaintiff alleges that Defendant's "use of market orders for crypto buys and sells lead[s] to [the] crypto user[s] [loss of] money every time." *Id.*

1

After the filing of the Amended Complaint, Defendant filed its Motion to Compel Arbitration, with exhibits and a Declaration from Marc O'Such, a Senior paralegal with Defendant. ECF No. 9.[1]  The exhibits include Defendant's Customer Agreement, which Defendant argues contains a mandatory arbitration provision.  Mot., Ex. 3.  Plaintiff did not file a direct response to the Motion to Compel Arbitration but did file a Motion to Strike the Motion to Compel Arbitration. ECF No. 19.

## II.  Legal Standard

Depending on the circumstances, a motion to compel arbitration may be analyzed under either the Rule 12(b)(6) motion to dismiss standard or the Rule 56 motion for summary judgment standard.  *Guidotti v. Legal Helpers Debt Resolution, LLC*, 716 F.3d 764, 773–76 (3d Cir. 2013). The Rule 12(b)(6) standard applies "[w]here the affirmative defense of arbitrability of claims is apparent on the face of a complaint (or ... documents relied upon in the complaint)."  *Id.* at 773–74 (internal quotations omitted).  The summary judgment standard, however, applies when either (1) "the motion to compel arbitration does not have as its predicate a complaint with the requisite clarity to establish on its face that the parties agreed to arbitrate," or (2) "the opposing party has come forth with reliable evidence that is more than a naked assertion ... that it did not intend to be bound by the arbitration agreement, even though on the face of the pleadings it appears that it did." *Id.* at 774 (quotations and citations omitted).  If the reviewing court finds that the motion to compel arbitration must be analyzed under the summary judgment standard, "the parties should be entitled

---

[1] In its Motion, Defendant states that "by filing th[e] motion, [Defendant] does not waive and expressly reserves all defenses and rights and does not consent to the jurisdiction of this Court to entertain the claims set forth in Plaintiff's Complaint." Mot. 1, n.1.  Additionally, Defendant raises arguments that Plaintiff has not effectuated proper service against Defendant and that, should the Court deny the Motion to Compel Arbitration, Defendant requests that the Court dismiss this case based on improper venue.  Mot. 1, n.2, 9, n.9.  The Court will make no rulings as to these additional arguments until they are fully briefed by the parties.

to discovery on the question of arbitrability before a court entertains further briefing on [the] question." *Id.* at 776 (internal quotations omitted).

Here, the Amended Complaint does not contain any facts indicating the existence of an arbitration agreement. Further, Mr. Parker's claims do not rely on any documents that contain the contested arbitration agreement. The arbitrability of Mr. Parker's claims is therefore not apparent from the face of the Amended Complaint and the appropriate standard of review is the Rule 56 summary judgment standard.

While the Court acknowledges that it is common to allow the parties to conduct limited discovery on the question of arbitration when determining a motion to compel arbitration under a summary judgment standard, the Court does not find that discovery is warranted under the facts of this case. To begin, Plaintiff has not requested discovery and has raised no arguments against arbitration, outside of a motion to strike. Therefore, Plaintiff has not asserted any arguments that are not purely legal in nature. Accordingly, the Court finds that the material facts can be determined from the record before the Court and are not in dispute. The Court will, therefore, apply the Rule 56 standard in deciding the Motion to Compel Arbitration, "but will forego discovery as to the arbitrability issue because the necessary information is already part of the record." *Strange v. Comcast Corporation*, Civil Action No. 18-4032, 2018 WL 6602072, at *2 n.7 (E.D. Pa. Dec. 14, 2018) (citing *Glenwright v. Carbondale Nursing Home, Inc.*, 2017 WL 1092541, at *3 (M.D. Pa. Mar. 23, 2017)) (finding that discovery was not appropriate, under the Rule 56 standard, where the plaintiff only presented legal arguments and material facts were clear from the record); *Smith v. RGIS, LLC*, Case No. 2:16-cv-841, 2017 U.S. Dist. LEXIS 166608, at *13-14 (W.D. Pa. Oct. 6, 2017) (same).

Under Rule 56, summary judgment is warranted where the moving party shows that there is no genuine dispute about any material fact, and that judgment as a matter of law is warranted. Fed. R. Civ. P. 56(a).  In evaluating the evidence, the court must interpret the facts in the light most favorable to the nonmoving party, drawing all reasonable inferences in his or her favor. *Watson v. Abington Twp.*, 478 F.3d 144, 147 (3d Cir. 2007).

In ruling on a motion for summary judgment, the court's function is not to weigh the evidence, make credibility determinations, or determine the truth of the matter; rather, its function is to determine whether the evidence of record is such that a reasonable jury could return a verdict for the nonmoving party.  *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150–51 (2000) (citing decisions); *Anderson v. Liberty Lobby*, 477 U.S. 242, 248–49 (1986); *Simpson v. Kay Jewelers, Div. of Sterling, Inc.*, 142 F.3d 639, 643 n. 3 (3d Cir. 1998).

The mere existence of a factual dispute, however, will not necessarily defeat a motion for summary judgment.  Only a dispute over a material fact—that is, a fact that would affect the outcome of the suit under the governing substantive law—will preclude the entry of summary judgment.  *Anderson*, 477 U.S. at 248.

### III. Discussion

#### A. Motion to Compel Arbitration

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16, "establishes a strong federal policy in favor of the resolution of disputes through arbitration."  *Alexander v. Anthony Intern., L.P.*, 341 F.3d 256, 263 (3d Cir. 2003).  "Accordingly, 'federal law presumptively favors the enforcement of arbitration agreements.'"  *Id.* (citing *Harris v. Green Tree Financial Corp.*, 183 F.3d 173, 178 (3d Cir. 1999)).  "A party to a valid and enforceable arbitration agreement is entitled to a stay of

federal court proceedings pending arbitration as well as an order compelling such arbitration." *Id.* (internal citations omitted).

The Court must first determine whether this case implicates the Federal Arbitration Act. *See Gay v. CreditInform*, 511 F.3d 369, 378 (3d Cir. 2007). The Federal Arbitration Act provides that:

> [a] written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2.

Plaintiff has raised no arguments that the FAA does not apply. Defendant argues that the FAA applies because the transaction at issue was conducted via the internet and, therefore, had an effect on interstate commerce. Mot. to Compel 11 (citing *Clerk v. Cash Cent. of Utah, LLC*, 2011 WL 3739549, at *3 (E.D. Pa. Aug. 25, 2011); *United States v. MacEwan, 445 F.3d 237, 246 (3d Cir. 2006)* (the "Internet,…is properly regulated by Congress as a channel and instrumentality of interstate commerce"); *Out of the Box Enterprises, LLC v. El Paseo Jewelry Exch.,* 2011 WL 13135643, at *4 (C.D. Cal. Feb. 24, 2011) (*citing United States v. Sutcliffe,* 505 F.3d 944, 953 (9th Cir. 2007) (*"A website, transmitted worldwide over the Internet, falls within the scope of commerce lawfully regulated by Congress because the Internet has been deemed an 'instrumentality and channel of interstate commerce.'"*)). The Court agrees with Defendant and finds that the FAA applies.

Because the FAA applies, the Court must now determine:

> (1) whether a valid agreement to arbitrate exists and (2) whether the particular dispute falls within the scope of that agreement. *See PaineWebber, Inc. v. Hartmann,* 921 F.2d 507, 511 (3d Cir.1990), *overruled on other grounds by Howsam v. Dean Witter Reynolds,* 537 U.S. 79, 85, 123 S.Ct. 588, 154 L.Ed.2d

5

> 491 (2002). When a dispute consists of several claims, the court must determine on an issue-by-issue basis whether a party bears a duty to arbitrate. *See Painewebber Inc. v. Hofmann,* 984 F.2d 1372, 1376–77 (3d Cir.1993). When determining both the existence and the scope of an arbitration agreement, there is a presumption in favor of arbitrability. "[A]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Technologies, Inc. v. Communications Workers of America,* 475 U.S. 643, 650, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986).

*Trippe Mfg. Co. v. Niles Audio Corp.*, 401 F.3d 529, 532 (3d Cir. 2005).

### i. Whether a Valid Arbitration Agreement Exists

Generally, "'[q]uestions concerning the interpretation and construction of arbitration agreements are determined by reference to federal substantive law.'" *Gay*, 511 F.3d at 388 (quoting *Harris v. Green Tree Fin. Corp.*, 183 F.3d 173, 179 (3d Cir. 1999)).

> Nevertheless, notwithstanding the supremacy of federal law, courts repeatedly have held that "in interpreting [arbitration] agreements, federal courts may apply state law, pursuant to section two of the FAA." *Harris,* 183 F.3d at 179. In particular, "generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening § 2." *Doctor's Assocs., Inc. v. Casarotto,* 517 U.S. 681, 687, 116 S.Ct. 1652, 1656, 134 L.Ed.2d 902 (1996). In applying ordinary state law principles to evaluate arbitration agreements, *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 944, 115 S.Ct. 1920, 1924, 131 L.Ed.2d 985 (1995), the cases have indicated that courts may look in particular to the laws of the involved state or territory. *See, e.g., Parilla v. IAP Worldwide Servs. VI, Inc.,* 368 F.3d 269, 276 (3d Cir. 2004) (applying Virgin Islands law to determine whether arbitration agreement was enforceable in lawsuit based on Title VII); *Spinetti v. Serv. Corp. Int'l,* 324 F.3d 212, 214 (3d Cir. 2003) (applying Pennsylvania law to determine whether arbitration agreement was enforceable in action based on Title VII and the ADEA); *Blair v. Scott Specialty Gases,* 283 F.3d 595, 603 (3d Cir. 2002) (applying Pennsylvania law to determine whether arbitration agreement was enforceable in lawsuit based on Title VII); *Harris,* 183 F.3d at 181–84 (applying Pennsylvania law to determine whether arbitration agreement was unconscionable in lawsuit based on RICO).
>
> The cardinal principle of the law of arbitration is that "under the [FAA, arbitration] is a matter of consent, not coercion, and parties are generally free to structure their arbitration agreements as they see fit." *Volt Info. Sciences, Inc. v. Bd. of Trustees of the Leland Stanford Junior Univ.,* 489 U.S. 468, 479, 109 S.Ct. 1248, 1256, 103 L.Ed.2d 488 (1989). That freedom extends to choice-of-law provisions governing

>agreements, including agreements to arbitrate. *See Trippe Mfg. Co. v. Niles Audio Corp.,* 401 F.3d 529, 532 (3d Cir. 2005) (applying New York law pursuant to choice-of-law provision in determining whether to enforce arbitration agreement); *Gen. Elec. Co. v. Deutz AG,* 270 F.3d 144, 155 (3d Cir. 2001) ( "In general, we respect the choice of law that parties agree upon to resolve their private disputes."); *see also Suburban Leisure Ctr., Inc. v. AMF Bowling Prods., Inc.,* 468 F.3d 523, 526 (8th Cir. 2006) (applying Virginia law pursuant to choice-of-law provision after determining that both Virginia and the forum state of Missouri enforce choice-of-laws provisions); *Overstreet v. Contigroup Cos.,* 462 F.3d 409, 411 (5th Cir. 2006) (applying Georgia law pursuant to choice-of-law provision in determining whether to enforce arbitration agreement); *Pro Tech Indus., Inc. v. URS Corp.,* 377 F.3d 868, 872 (8th Cir. 2004) (applying Texas law pursuant to choice-of-law provision to determine whether to enforce arbitration agreement).

*Gay*, 511 F.3d at 388-89.

Here, the Agreement contains a choice-of-law provision providing that "any dispute between the parties will be governed by this Agreement and the laws of the State of California and applicable United States law." Agreement, Ex. 3, ¶ 18. While the Agreement calls for the application of California law in the arbitration proceeding, it does not indicate what law should apply when determining whether the Agreement contains a valid choice of law provision. *See General Elec. Co.*, 270 F.3d at 153 ("Although the arbitration clause called for the application of Swiss law, that provision applied to the arbitration proceeding, not to the initial determination of whether there had been an agreement on who would decide arbitrability."). Therefore, the Court will look to Pennsylvania law for determining whether there is a valid choice of law provision. *See Gay*, 511 F.3d at 389.

Pennsylvania law generally enforces choice of law provisions in contracts "unless either (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis or the parties' choice, or (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue." *Kruzits v. Okuma Mach. Tool, Inc.*, 40

F.3d 52, 55 (3d Cir. 1994) (citing *Smith v. Commonwealth Nat. Bank*, 557 A.3d 775. 777 (1989)) (cleaned up).  The Court cannot say that California does not have a substantial relationship to the transaction or that the application of California law would be contrary to the application of Pennsylvania law.  Therefore, the Court will enforce the choice of law provision in the Agreement and find that California law applies when considering the enforceability of the arbitration provision.

Having found that California law applies, the Court must now determine whether the parties agreed to arbitrate and if so, whether the arbitration provision is enforceable.  *See Houtchens v. Google, LLC*, 649 F. Supp. 3d 933, 938-43 (N.D. Ca. 2023).

Here, the Court finds that the parties agreed to arbitrate.  To begin, Plaintiff has presented no arguments to the contrary.  Additionally, the Court finds that Plaintiff agreed to arbitrate when he clicked "submit" and accepted Defendant's Agreement.  Decl. of O'Such, ¶ 6.  Courts in the Ninth Circuit have held that mutual assent manifests when internet users accept "clickwrap" agreements[2], like the one at issue here, as long as the plaintiff was provided "reasonably conspicuous notice" of the terms of the agreement.  *Adibzadeh v. Best Buy, Co. Inc.*, Case No. 20-cv-06257, 2021 WL 4440313, at *5 (N.D. Ca. March 2, 2021); *Houtchens*, 649 F. Supp. 3d at 939.  Here, the Exhibits submitted by Defendant show that Plaintiff was provided "reasonably conspicuous notice" of the terms of the Agreement.  *Id.*  Plaintiff was prompted to review the Agreement and then had to click "submit" to agree to the Agreement in order to create his account. Decl. of O'Such, ¶ 8; Mot. to Compel, Ex. 2.

---

[2] "A clickwrap agreement is an agreement in which internet users are 'required to click on an "I agree" box after being presented with a list of terms and condition of use.'" *Adibzadeh*, 2021 WL 4440313, at *5 (quoting *Nguyen v. Barnes & Noble, Inc.*, 763 F.3d 1171, 1175-76 (9th Cir. 2014)).

Having found that the parties agreed to arbitrate, the Court must now determine whether the arbitration agreement is unenforceable.

> Under California law, the party challenging the enforceability of an arbitration agreement has the burden of proving that the agreement is unenforceable. *Mortensen v. Bresnan Commc'ns LLC*, 722 F.3d 1151, 1157 (9th Cir. 2013). A court must find that a contract is both procedurally and substantively unconscionable before it can exercise its discretion to refuse to enforce a contract. *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 114 (2000); *Kiefer v. Simonton Bldg. Prod, LLC*, No. CV 16-3540 (RHK/SER), 2017 WL 1380497, at *3 (D. Minn. Apr. 17, 2017) (citing *Williams v. Walker-Thomas Furniture Co.*, 350 F.2d 445, 449 (D.C. Cir. 1965)) ("The unconscionability doctrine has procedural and substantive aspects, and the party invoking the doctrine must demonstrate both to avoid the terms of a contract."). Procedural unconscionability "focus[es] on 'oppression or surprise' due to unequal bargaining power" while the substantive element "focus[es] on 'overly harsh' or 'one-sided results.'" *Armendariz*, 24 Cal. 4th at 114 (citation omitted).

*Adibzadeh*, 2021 WL 4440313, at *7.

Plaintiff has raised no arguments that the Arbitration Agreement is unconscionable. However, even if Plaintiff had raised such arguments, the Court does not find that the Arbitration Agreement is unconscionable. While Plaintiff arguably did not have the same bargaining power as Defendant when he entered into the Agreement, he has not provided any basis for the Court to find that the bargaining power was so unequal as to be unconscionable. Additionally, while Plaintiff was required to click on a "submit" box, accepting the terms of the Agreement, in order to use Defendant's services, numerous courts have held that a "clickwrap" agreement is not unconscionable. *See Adibzadeh*, 2021 WL 4440313, at *7; *In re Holl*, 925 F.3d 1076, 1080, 1083-84 (9th Cir. 2019); *Mohamed v. Uber Techs, Inc.*, 848 F.3d 1201, 1211 (9th Cir. 2016); *Houtchens v. Google, LLC*, 649 F. Supp. 3d 933 (N.D. Ca. 2023).

Therefore, the Court finds that a valid arbitration agreement exists and is enforceable. The Court notes, however, that Plaintiff has raised numerous arguments challenging the enforceability of the Agreement, in general. However, at this stage of the proceedings, when presented with a

9

motion to compel arbitration, it is only proper for the Court to determine whether there is a valid arbitration agreement. The Court may not determine the merits of Plaintiff's claims because those claims are left for disposition to the arbitrator. *See Gay*, 511 F.3d at 386. Therefore, the Court will not analyze Plaintiff's arguments about his underlying claims.

        ii.     **Whether the Dispute Falls Within the Scope of the Arbitration Agreement**

Having determined that the parties agreed to arbitration and that the agreement was not unconscionable, the Court must now determine whether the dispute falls within the Arbitration Agreement. Here, the Arbitration Agreement clearly states that it applies to "any dispute." Agreement, Ex. 3, ¶ 18. Therefore, Plaintiff's claims fall squarely within the Arbitration Agreement.

    **B. Plaintiff's Motions**

As stated above, the following Motions filed by Plaintiff are also before the Court: Motion for Breach of Contract (ECF No. 14), Amended Motion for Breach of Contract (ECF No. 16), Motions to Strike (ECF Nos. 19, 27), Motion for Public Disclosure (ECF No. 28), Motion for Oral Argument (ECF No. 31), Motion to Compel and for Sanctions (ECF No. 32), Motion to Alter or Amend Judgment (ECF No. 33), Motion to Expedite Ruling (ECF No. 34); Motion for Reconsideration (ECF No. 36) and Motion to Expedite the Motion for Reconsideration (ECF No. 37).

Plaintiff's Motion to Alter or Amend Judgment (ECF No. 33) and Motion for Reconsideration (ECF No. 36) are denied for the reasons set forth by the Court in its June 3, 2024 Order (ECF No. 30). Additionally, Plaintiff's Motions to Strike the Motion to Compel (ECF Nos. 19, 27) are denied. Plaintiff's Motion to Expedite Ruling (ECF No. 34) and Motion to Expedite

the Motion for Reconsideration (ECF No. 37) are denied as Moot. Finally, Plaintiff's Motion for Oral Argument (ECF No. 31) is denied.

The remainder of Plaintiff's Motions are stayed pending the outcome of arbitration.

### IV. Conclusion

For the reasons discussed above, the Court will GRANT Defendant's Motion to Compel Arbitration. This case is STAYED pending the outcome of arbitration.[3]

Plaintiff's Motions to Strike the Motion to Compel (ECF Nos. 19, 27), Motion to Alter or Amend Judgment (ECF No. 33), Motion for Reconsideration (ECF No. 36), and Motion for Oral Argument (ECF No. 31) are DENIED. Additionally, Plaintiff's Motion to Expedite Ruling (ECF No. 34) and Motion to Expedite the Motion for Reconsideration (ECF No. 37) are DENIED AS MOOT. The remainder of Plaintiff's Motions are STAYED pending the outcome of arbitration.

BY THE COURT:

*/s/Robert J. Colville*
Robert J. Colville
United States District Judge

DATED: September 24, 2024

cc:   All counsel of record

   Ja'Quan Parker
   705 Baldwin Rd.
   Pittsburgh, PA 15207

   Ja'Quan Parker
   1239 Church Ave.
   McKees Rocks, PA 15136

---

[3] The Arbitration Agreement provides that arbitration will occur in the county of Plaintiff's domicile or in San Francisco, California. Plaintiff has not indicated where he would prefer arbitration to occur, but given his pro se status, the Court finds that arbitration shall occur in the county of Plaintiff's residence, if Plaintiff so requests.